## Treaster v. Union Township, Appellant.

Argued November 20, 1967. Before BELL, C. J., MUSMANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Larry F. Knepp,* with him *Robert Stuckenrath,* and *Stuckenrath and Knepp,* for appellants.

*R. Lee Ziegler,* with him *John B. Schaner,* for appellees.

OPINION BY MR. JUSTICE COHEN, May 21, 1968:

This is another appeal generated by the never-ending search of our local municipalities to seek addition-

al sources of tax revenue to meet their budgetary needs. In this search they have found a willing ally in the General Assembly which, over two decades ago, enacted the Act of June 25, 1947, P. L. 1145, the so-called "Act 481" or "Tax Anything Act." This Act conferred broad taxing powers on the local subdivisions, powers limited generally only by the existence of state tax impositions (and even then not always) and the local imagination and specifically only by certain procedural requirements and monetary limits contained in Act 481 itself. While Act 481 recently has been thoroughly amended by the Act of December 31, 1965, P. L. 1257, 53 P.S. §§6901-6923, the present case arose prior to these amendments and must be viewed in light of the statute as it existed at the time.

On November 2, 1965, the supervisors of Union Township adopted a resolution imposing an occupation tax upon all residents and inhabitants of the township. The tax was imposed at a rate of twenty percent (20%) upon stated assessed values of various occupations and was effective for the fiscal year 1965 (January 4, 1965 to January 3, 1966). This tax resolution was the second to have been adopted by the supervisors during 1965. The first, which was adopted on February 16, 1965, was found invalid by the lower court on November 4, 1965.

On March 24, 1966, five residents of Union Township (the present appellees) brought an action in equity to enjoin the township, the supervisors and the tax collector from collecting any tax under the resolution of November 2, 1965. They alleged various reasons for their attack on the resolution. These may be summarized as follows: (1) Act 481 provides that no tax imposed thereunder shall go into effect until thirty days after adoption of the tax resolution, yet the tax here was imposed retroactively for the entire fiscal

year; (2) the tax, in actuality, was a per capita tax and thus was not only in excess of the maximum limit for such a tax under Act 481, but also was invalid because the township and its school district had already levied per capita taxes to the maximum allowed; (3) the township's budget did not accurately reflect the estimated revenue from the tax, nor provide for the appropriation of this revenue; (4) the resolution included certain occupations in the classes of taxables which were exempt from tax and, additionally, was too vague in its classifications; (5) the tax, when added to the existing real estate tax in the township, exceeded the total allowable millage under The Second Class Township Code, §905, 53 P.S. §65905; and (6) a percentage occupation tax could not be levied under Act 481 in any event but had to be imposed under The Second Class Township Code which made the fourth Monday in March the last day for so doing.

The defendants (appellants) appropriately answered; testimony and other evidence were presented; and on October 31, 1966, the court below entered its decree nisi. In its opinion the court upheld the resolution and refused to enjoin the defendants. On the various issues posed the court ruled as follows: (1) there is no invalidity in the timing of the resolution since it could be imposed at any time during the fiscal year as long as there remained more than thirty days in such year; (2) to the extent the resolution attempted to impose the tax on all persons over twenty-one years of age and residing in the township but following no occupation or calling, it was invalid; but this invalidity was severable and did not affect the remainder of the resolution; (3) the amount ($18,500) originally budgeted by the supervisors as anticipated revenue from this tax, although based on the situation prevailing when the earlier invalid resolution was adopted

(i.e., the school district expected to collect one-half of the tax) and although less than the amount ($30,000) advertised as anticipated from the tax at the time of adoption of the second resolution, was actually in excess of actual receipts for the fiscal year; and, therefore, all budgetary requirements were met; (4) the classification of occupations was sufficiently specific and not vague, and while the farmer-plaintiff could not be taxed as a farmer, he was subject to tax as a bus driver; (5) the millage limitation on taxes in The Second Class Township Code does not apply to taxes levied under Act 481 and the limitation contained in the latter act was not exceeded; and (6) Act 481 clearly allows imposition of a percentage occupation tax under its terms and the present tax was properly so enacted.

Plaintiffs filed exceptions; and on January 13, 1967, the lower court entered a final decree sustaining several of them, reversing its decree nisi and enjoining defendants from assessing and collecting the tax. The gist of the court's reasoning for so changing its mind was that Act 481, it said, did not excuse the township from revising its budget at the time it adopted the November 2 resolution to reflect the new amount ($30,000) of anticipated revenue or to appropriate the funds provided thereby. Not having done so, the tax is invalid. In addition, the court noted, it had erred with regard to the actual amount collected by the township during 1965 since this amount ($19,730.80) was slightly in excess of the budgeted amount.

The present dispute has its genesis in the conflicting philosophies of Act 481 and The Second Class Township Code. Whereas the latter contains very specific clauses setting forth in detail what taxes may be levied by a second class township and how budgets are to be prepared and enacted, the former extends a broad

and general grant of taxing power. In addition, prior to the Act of October 7, 1955, P. L. 673, amending §6 of Act 481, the former contained the following provision: "Any tax imposed under this act shall not be subject to any limitations under existing laws as to rate or amount." Act of June 25, 1947, P. L. 1145, §6. It was in the context of these two statutes that the Superior Court decided *Rose Township v. Hollobaugh,* 179 Pa. Superior Ct. 284, 116 A. 2d 323 (1955), on August 3, 1955. According to this decision, a second class township could not legally enact a tax under Act 481 after the annual budget had been adopted. To do so, said the Court, would violate the budgetary restrictions contained in The Second Class Township Code.

Two months later, on October 7, 1955, the General Assembly passed an act amending §6. After its passage the section read as follows: "Any tax imposed under this act shall not be subject to any limitations under existing laws as to rate or amount or as to the necessity of securing court approval as to budgetary requirements. Any city, borough or township imposing a tax under this act may revise its budget during any fiscal year by increasing or making additional appropriations from funds to be provided from such tax." The court below read this amendment as reversing the *Rose Township* case to the extent of permitting enactment of a tax ordinance or resolution after adoption of the budget. However, it also held that the new language required the municipality to revise its budget at such time; in so deciding, it concluded that the word "may" in the second sentence should be construed as if it were "must" or "shall." We disagree.

Words used in a statute are not lightly to be given a meaning other than their normal one. As we said recently: "Both by statute and decisional law we are required to construe words and phrases according to

their common and approved usage; statutes are presumed to employ words in their popular and plain everyday sense and the popular meaning of such words must prevail unless the statute defines them otherwise or unless the context of the statute requires another meaning." *Harris-Walsh v. Dickson City Borough,* 420 Pa. 259, 271, 216 A. 2d 329, 335 (1966). While it is true that, occasionally, we have interpreted "may" in a statute as mandatory, we have done so usually where the ends of justice or constitutional requirements so dictate. *Hotel Casey Company v. Ross,* 343 Pa. 573, 23 A. 2d 737 (1942); *Seligsohn Appeal,* 410 Pa. 270, 189 A. 2d 746 (1963). In the present situation we discern no such reason.

In fact, in light of the record before us, we fail to see how a mandatory requirement that the budget be revised following enactment of the November 2 resolution could serve any useful purpose. The original budget, adopted in April, 1965, anticipated revenues of $18,500 from the tax and made appropriations accordingly. This estimate was based upon the township's actually receiving one-half of the tax because, at that time, the school district was expected to take the other half. When the first tax resolution was declared invalid and the new one enacted in November, 1965, it was carefully determined that even though the ultimate collections would reach $30,000, the actual revenues for 1965 would not (because of the year-long controversy) exceed the original budgeted amount of $18,500. Therefore, what revision should be made? The lower court suggested it was necessary to revise the budget to state anticipated total collections less the amount not collectible in 1965; otherwise, it said, the township would be illegally enacting a tax for more than one year. This is clearly not so; a carryover of collections into a succeeding year involves no imposition of tax

230

for that year; it simply reflects normal collection problems.

The statute supports our conclusion. It speaks of a municipality revising its budget to increase or make additional appropriations. Since no added revenue was expected, no increased or new appropriations could be made. Therefore, there was no revision necessary.

We have considered the other issues raised in the court below by the taxpayers (appellees) and repeated here and find them without merit. They were correctly disposed of by the court below.

The decree of the court below is vacated and plaintiffs-appellees' complaint is dismissed. Each party to bear own costs.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.